**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**


| | |
|---|---|
| STEVE JONES, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )        NO. 08-CV-255-WDS |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |


## MEMORANDUM & ORDER

**STIEHL, District Judge:**

Before the Court are petitioner Steve Jones's pro se motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Docs. 1 & 4), his supplemental brief (Doc. 6), the Government's response (Doc. 15), and petitioner's reply (Doc. 24). Petitioner's motion presents nine (9) grounds for relief, all based on ineffective assistance of counsel. The supplement contains sixteen (16) grounds, though some overlap with the original motion. Petitioner seeks a new trial, a sentence within the range supported by the jury's verdict, or a sentencing hearing.


## BACKGROUND

Petitioner Steve Jones was incarcerated at the Menard Correctional Center in Menard, Illinois, when he developed a friendship with Correctional Officer Michael Poenitske. Poenitske had a drug problem and mentioned he was looking for a new source for drugs.

1

Petitioner called some people he knew in Chicago and Southern Illinois to find a supplier. They arranged numerous drug transactions between August and November 2002. Poenitske often purchased more drugs than he needed for his own use and would distribute them to petitioner's associates in Southern Illinois. Petitioner then received money at his prison bank account.

Petitioner argued at trial that Poenitske forced him to make the drug and gun sales. Menard was a restrictive prison, and prisoners had to obey the guards. According to petitioner, Poenitske could shoot him at any time from his house (Tr. Vol. V, 30:16–19).[1] Petitioner testified he was afraid Poenitske would plant things in his cell if he refused to provide drug contacts. Poenitske allegedly filed bogus misconduct tickets against petitioner to have privileges taken away. These actions, according to petitioner, eventually "encouraged" him to set up the drug sales. Poenitske also allegedly used to rough him up and threatened to kill him (Tr. Vol. V, 26:4–14). Petitioner complained to several prison officials, but refused to give Poenitske's name because he feared retaliation (*id.*, 29:10–31:3).

The Illinois Department of Corrections (IDOC) intercepted phone calls and letters exchanged among the parties, and that evidence was presented at the jury trial (*e.g.*, Tr. Vol. I, 35–65). Inmates at Menard were generally aware that calls could be monitored and therefore often talked in code. At trial, the Institutional Intelligence Coordinator at Menard, Donald Enloe, described the phone conversations IDOC had intercepted involving petitioner and

---

[1] Poenitske was a former Marine sniper.

translated some of the code words. In addition, tapes of the intercepted phone calls were played for the jury. The jury was also given transcripts of the phone calls during the trial.

Also involved in the drug sales was a former Menard inmate named Jau Tolden. Agent Dan Owens of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) approached Tolden about working undercover. Tolden agreed. Petitioner and Poenitske later contacted Tolden about selling him a firearm in exchange for drugs. The firearm in question was one Poenitske had reported stolen.

In March of 2005, a jury convicted petitioner of one count of conspiracy to distribute 50 or more grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count 1), and one count of sale of a firearm to a known felon in violation of 18 U.S.C. §§ 2 and 922(d)(1) (Count 2). *See United States v. Poenitske et al.*, Case No. 02-CR-30145-WDS. Petitioner was sentenced to concurrent sentences of 360 months in prison on Count 1 and 120 months on Count 2. He appealed, but his appellate counsel filed a motion to withdraw because she could not discern any nonfrivolous arguments. *See Anders v. California*, 386 U.S. 738 (1967). The Seventh Circuit granted her motion to withdraw and dismissed the appeal in *United States v. Jones*, No. 05-3881, 2007 WL 1046515 (7th Cir. April 5, 2007).

## DISCUSSION

**Relief Under 28 U.S.C. § 2255**

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the

sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." § 2255(b).

Grounds for relief pursuant to § 2255 are more limited than grounds for relief on direct appeal. As a general rule, "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003); *accord Levine v. United States*, 430 F.2d 641, 642–43 (7th Cir. 1970). A motion under § 2255 is "neither a recapitulation of nor a substitute for a direct appeal." *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007) (quoting *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996)); *see also Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds by Castellanos v. United States*, 26 F.3d 717, 719–20 (7th Cir. 1994) (nonconstitutional issues that could have been raised on appeal but were not are procedurally defaulted). Moreover, issues that were already raised on appeal "may not be reconsidered on a § 2255 motion absent changed circumstances." *Varela*, 481 F.3d at 935–36.

Constitutional issues that were not raised on appeal, however, may be considered if the petitioner can demonstrate either (1) good cause for not raising them on appeal and actual prejudice from not raising them, or (2) that the district court's refusal to consider them would lead to a fundamental miscarriage of justice. *McLeese*, 75 F.3d at 1177.

**Ineffective Assistance of Counsel**

An exception to the limitations above are claims of ineffective assistance of counsel. Ineffective-assistance claims may be brought in a collateral proceeding under § 2255 even though the petitioner could have, but did not, raise the issue on direct appeal. *Massaro*, 538 U.S. at 508.

Under the Sixth Amendment, criminal defendants are guaranteed the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). So long as the defendant's counsel "chooses a professionally competent strategy that secures for the accused the benefit of an adversarial trial," the Sixth Amendment right to effective assistance of counsel has been met. *Kokoraleis v. Gilmore*, 131 F.3d 692, 696 (7th Cir. 1997). Defendants are not entitled to "the best available counsel or the most prudent strategies." *Id.*

When reviewing a claim of ineffective assistance of counsel, courts apply the two-pronged test from *Strickland v. Washington*, 466 U.S. 668 (1984). First, petitioners must prove that their counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688. Second, they must show that, but for their counsel's deficiency, there is a reasonable probability that the outcome would have been different. *Id.* at 694. Petitioners "must identify the specific acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690.

Petitioner bears a heavy burden to show that counsel was ineffective and that his defense was actually prejudiced. *Shell v. United States*, 448 F.3d 951, 955 (7th Cir. 2006). The reasonableness standard is not meant "to second-guess counsel's strategic decisions." *United States v. Recendiz*, 557 F.3d 511, 531 (7th Cir. 2009) (quoting *Harris v. Reed*, 894 F.2d 871,

877 (7th Cir. 1990)). Courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Jones v. Page*, 76 F.3d 831, 840 (7th Cir. 1996) (quoting *Strickland*, 466 U.S. at 689).

## ANALYSIS

Upon review of the parties' filings and the record, the Court finds that the record conclusively demonstrate that petitioner is not entitled to relief, so an evidentiary hearing is unnecessary. *See Menzer v. United States*, 200 F.3d 1000, 1006 (7th Cir. 2000).

### A. Grounds 1, 7 & Supplement 1

In Ground 1, petitioner argues that his trial counsel, Grant Shostak, was ineffective for failing to call Gary Witherspoon as a witness. Petitioner believes Witherspoon's testimony would have corroborated his defense that he was repeatedly threatened by codefendant Poenitske into setting up drug contacts and selling a weapon to a felon. Because such testimony was not presented, this Court refused to give a jury instruction on petitioner's defense of duress. Similarly, in Ground 7, petitioner faults trial counsel, Shostak, for not calling any witnesses or the court-appointed private investigator to corroborate the duress defense. He alleges he gave Shostak a list of 25–31 potential witnesses, none of whom was called to testify. Thus, the jury heard only petitioner's admission to the crimes and the prosecution's "overwhelming evidence" and numerous witnesses against him (Doc. 4, pp. 47–48).

In an affidavit prepared before trial, Witherspoon states that he worked with petitioner in the laundry room of Menard Correctional Center (Doc. 4-1, Ex. A). On several occasions, Poenitske asked Witherspoon to leave the laundry room so that he could speak with petitioner privately. Witherspoon once overheard Poenitske yell at petitioner, "Your motherfucking homie better have my shit whenever I go back up there," and, "You better get your ass on the phone and take care of that business" (*id.*). According to Witherspoon, petitioner had a "scared look on his face" (*id.*). Shostak tried to introduce the affidavit at trial, but the Government objected on hearsay and authenticity grounds. The Court advised that the better course would be to call Witherspoon to testify. Ultimately, Shostak did not call Witherspoon to the stand.

Petitioner asserts he gave the names of numerous other potential witnesses to Shostak. A relevant sample of their purported testimony includes the following:

- Petitioner's acquaintances Charles Emery and George Habermehl saw Poenitske harass or threaten petitioner, and beat him up.
- Petitioner's cellmate, Trevell Wells, heard Poenitske tell petitioner to keep quiet "because of the heat," and threatened him if he didn't.
- Betty Barrows had complained to the police about Poenitske sexually harassing her and threatening her.
- The counselor at the prison, Tim Miller, would testify about petitioner's verbal complaints that he was being harassed but refused to give the name of the correctional officer out of fear for his safety.
- Petitioner sent written complaints that he feared for his life to the prison superintendent, Al Martin. Petitioner refused to give Martin the name of the officer, however, until petitioner was transferred to another facility.
- Candace Childrens, a correctional officer, could testify that petitioner tried to walk to protective custody out of fear for his safety.
- Another inmate, Joseph Hurst, would testify that petitioner asked him what he should do since the staff would not help

> unless petitioner gave them the name of the officer who was
> threatening him.

(Doc. 6, pp. 18–21). Shostak states in an affidavit that he investigated petitioner's defense of duress, working with the private investigator and with petitioner (Doc. 15, Ex. 1, ¶5). But, after conferring with Witherspoon's attorney, Shostak decided not to call Witherspoon to testify because Witherspoon's expected testimony would not be consistent with his affidavit and, in fact, would be favorable to the prosecution (*id.*, ¶3). In addition, no witnesses were found who would support a finding that petitioner was in imminent danger or that he had no reasonable legal alternative to violating the law, both of which are required to establish duress. *See United States v. Fiore*, 178 F.3d 917, 922 (7th Cir. 1999). Shostak further says petitioner "at various times suggested that he may have also committed the acts not out of duress or necessity, but in an effort to win favor with Mr. Poeniske" and, thereby, regain good-time credit (*id.*, ¶5).

The Court first finds that Shostak's performance did not fall below an objective standard of reasonableness. Counsel's strategic decision not to call a witness is sound if it is based on a determination that the testimony the witness might, on balance, harm rather than help the defendant. *Foster v. Schomig*, 223 F.3d 626, 631 (7th Cir. 2000) (internal quotation omitted). Shostak also learned that Witherspoon's expected testimony may have favored the prosecution, so choosing not to call Witherspoon was a sound decision. As to the other potential witnesses, Shostak worked with both the private investigator and petitioner, but was unable to find anyone who would support a finding that petitioner either was in imminent danger or had no reasonable legal alternative to violating the law. The three elements of a

duress or coercion defense are: (1) an immediate threat of death or serious bodily injury; (2) a well-grounded fear that the threat will be carried out; and (3) the absence of a reasonable opportunity to avoid the threatened harm other than by committing the crimes charged. *Jones*, 2007 WL 1046515, at *3 (citing *United States v. Fiore*, 178 F.3d 917, 922 (7th Cir. 1999)); *see also United States v. Tokash*, 282 F.3d 962, 969 (7th Cir. 2002)). At most, the uncalled witnesses would have testified to petitioner's fear, and his having been threatened, harassed, and beaten up by Poenitske. They would not, however, have furnished the missing elements of imminent danger or the absence of a reasonable opportunity to avoid the threatened harm. It was therefore a good strategic decision not to call them.

Petitioner has also failed to establish prejudice: the "reasonable probability" that Shostak's performance affected the trial's outcome. The witnesses' proposed testimony is not different from what petitioner himself testified to in trial. Based on petitioner's testimony, the Seventh Circuit found the duress argument to be frivolous because petitioner admitted at trial, in his own testimony before the jury, that Poenitske's threats did not coerce him to participate in the crimes. *Jones*, 2007 WL 1046515, at *3. He also testified that the real reason Poenitske threatened him with death and beat him up was not to coerce him into arranging the drug deals, but because Poenitske had been shortchanged on one of these deals. *Id.* These admissions completely undermine petitioner's claims of error, and effectively nullify the impact Witherspoon's proposed testimony, as well as that of the other proposed witnesses. If petitioner was prejudiced, it was because of his own testimony, not any error of trial counsel.

With regard to Shostak's actions and trial decisions, even if Shostak had called the witnesses, their testimony would have fallen short of supporting a duress defense. They could

not have shown that petitioner faced an imminent threat of death, or that he had no reasonable opportunity to avoid the threatened harm. According to Witherspoon's affidavit, Poenitske allegedly told petitioner, "Your motherfucking homie better have my shit whenever I go back up there" and, "You better get your ass on the phone and take care of that business." These statements are ambiguous. While they might lend some support, they can also be taken to support the existence of the conspiracy. Further, they are future threats, if anything, and "future" and "imminent" are opposites. *Tokash*, 282, F.3d at 970. The time frame of the conspiracy also shows the threats were not imminent. Petitioner engaged in the conspiracy from August 12–November 20, 2002. So, he had substantial time and reasonable legal alternatives available to avoid the threats, including contacting prison officials and, if genuinely concerned, providing them with the information necessary for them to assist him. *See United States v. Tanner*, 941 F.2d 574, 588 (7th Cir. 1991) (affirming district court's decision not to instruct the jury on duress when the defendant passed up "at least four opportunities" to request protective custody from a prison guard). Instead, Tim Miller, Al Martin, and Joseph Hurst would have testified that petitioner refused to give Poenitske's name.

The Court **FINDS** that trial counsel's actions did not fall below a reasonable standard and, further, that calling the proposed witnesses likely would not have changed the outcome of petitioner's case. Grounds 1, 7, and Supplement Ground 1 are, therefore, **DENIED**.

## B. Ground 2 & Supplement 2

Petitioner next claims that trial counsel was ineffective for not challenging the qualifications of the Government's expert witness Donald Enloe to translate encoded messages recorded at the prison. Petitioner contends that counsel should not have stipulated to Enloe's

qualifications and should have consulted other experts to rebut Enloe and provide a defense translation of the audio tapes.

While petitioner was in prison, he made phone calls using coded language to disguise names and incriminating information. The calls were recorded, and the Government made transcripts of the recordings for trial. The transcripts included parenthetical translations provided by Donald Enlo, an intelligence coordinator at Menard. Enloe oversaw the unit that intercepted, analyzed, and disseminated intelligence from the prison. Based on his training in inmate codes and his experience, Enloe was presented by the Government as an expert in prison-code decryption.

Petitioner's counsel objected to the transcripts with Enloe's translations (Tr. Vol. I, 16:21–17:20). He argued they were not authenticated and that they violated petitioner's right to confront witnesses against him. The Court held a hearing and decided the transcripts would be admitted if Enloe could be qualified as an expert and be available for cross-examination at trial. Petitioner stipulated to Enloe's qualifications in exchange for the Government's agreement not to elicit certain incriminating evidence from Enloe at trial (Doc. 15, Ex. 1, ¶4). Petitioner also made amendments to the transcripts, which the Court accepted (Tr. Vol. I, 14:17–16:8). During trial, the Court admonished the jury that the transcripts were merely a guide and that only the recordings themselves were evidence. This was repeated in the jury instructions as well, which further stated it was the jury's responsibility to "decide whether the transcripts correctly reflect[ed] what was said and who said it." *See* Seventh Cir. Pattern Crim. Jury Instr. 3.17.

The failure to consult an expert witness in some circumstances can constitute ineffective assistance of counsel. *Ellison v. Acevedo*, 593 F.3d 625, 634 (7th Cir. 2010) (citing *Miller v. Anderson*, 225 F.3d 455, 459 (7th Cir. 2001)). The absence of a defense expert, however, is insufficient to establish ineffective assistance. *Id.* The petitioner must show that an "expert capable of supporting the defense was reasonably available at the time of trial." *Id.*

Petitioner's Ground 2 fails for several reasons. Petitioner waived this objection by stipulating to Enloe's qualifications before trial (Tr. Vol. 1, 14–17). He also waives the objection in this habeas motion by not supporting his argument that Enloe was unqualified; He does not rebut the strong presumption that, with respect to this claim, counsel was effective. Regarding the defense expert, petitioner has not presented any evidence that an expert capable of supporting his defense was available during trial; the absence of an expert by itself is insufficient to establish a claim that counsel rendered ineffective assistance. Trial counsel did object to the translations being included with the transcripts, but was overruled. And, although petitioner faults his attorney for not preparing an alternative version of the transcripts, he and his attorney did offer amendments to the translations, which the Court accepted. Petitioner does not say which specific portions of the transcripts he objects to now. As petitioner himself points out, when there is a dispute involving a translation, the burden lies with the respective parties to present transcripts or other evidence to support their version of the conversation. *United State v. Zambrana*, 864 F.2d 494, 497–98 (7th Cir. 1988). Yet petitioner does not do so. The Court cannot help but add that it is absurd for petitioner to suggest he needed an expert to translate his own phone calls. Surely if he had a friendlier version of events, he could have offered it at trial or explained that "'street slang' varies from

neighborhood to neighborhood" (Doc. 4, 12–13). There is no reason for the Court to find counsel's performance fell below an objective standard of reasonableness.

In any event, petitioner was not prejudiced by the lack of an expert. Several witnesses, including Toby Jones, Poenitske, Shawn Johnson, and petitioner himself testified that it was petitioner who arranged the drug transactions (Tr. Vol. IV, 32:6–37:20; Vol. IV, 87:13–93:23; Vol. IV, 166:16–173:3; Vol. V, 33:13–34:8). Ground 2 and Supplement Ground 2 are **DENIED**.

## C. Grounds 3, 4 & Supplement Grounds 3, 4

In Ground 3, petitioner claims his appellate counsel was ineffective for not raising, on appeal, the ineffectiveness of counsel at his sentencing hearing. He believes his counsel should have objected to the Court's enhancement of petitioner's offense level for obstruction of justice, drug quantity, and his role in the conspiracy. Specifically, he claims the jury found in its special verdict the amount of crack cocaine involved was at least 50 grams, yet the Court at sentencing found petitioner responsible for an additional 492 grams, which raised petitioner's base offense level four points. Similarly, he claims he was found guilty of being involved in a drug conspiracy, yet the Court at sentencing concluded that he played a leadership role, which raised petitioner's offense level another four points. And he claims that the Court at sentencing found petitioner had testified falsely about being threatened by Poenitske and tacked on another two points to petitioner's offense level for obstruction of justice.

Regarding both Grounds 3 and 4, on appeal the Seventh Circuit concluded that ineffective-assistance claims were better saved for a motion under § 2255. *Jones*, 2007 WL

1046515, at *4 (citing *Massaro v. United States*, 538 U.S. 500, 504 (2003)). Therefore, the Court **FINDS** that appellate counsel was not ineffective by not raising these claims on direct appeal.

Before taking up the *Batson* challenge, the Court will address the sentencing issues in Ground 3. Petitioner's appellate counsel raised those sentencing issues on appeal, but had concluded they were frivolous, and the Seventh Circuit agreed. *See Jones*, 2007 WL 1046515, at *4 (granting counsel's motion to withdraw). Once the Seventh Circuit has decided the merits of a ground of appeal, "that decision establishes the law of the case and is binding on a [court] asked to decide the same issue in a later phase of the same case, unless there is some good reason for reexamining it." *Fuller v. United States*, 398 F.3d 644, 648 (7th Cir. 2005) (quoting *United States v. Mazak*, 789 F.2d 580, 581 (7th Cir. 1986)). There is no reason for reexamining the sentencing issues now, and consequently, the law of the case is binding on this Court.

In Ground 4, petitioner asserts that appellate counsel was ineffective for not raising the ineffectiveness of trial counsel, Shostak, when he did not rebut the Government's race-neutral explanation for its peremptory challenge against Juror No. 24. Petitioner acknowledges that ineffective-assistance claims are better suited for collateral challenges, so that appellate counsel was likely not ineffective, yet he brings the claim nevertheless to avoid waiving it. Petitioner asserts that the Government showed "uncalled for haste" by attempting to use its first peremptory challenge against Juror No. 24. He also claims every juror on the panel except Juror No. 1 answered the question asking where they lived in the same way as Juror No. 24, but they were all Caucasian and not challenged. And he says prospective Juror No. 17, who

14

was Caucasian, answered the venire questions similarly to Juror No. 24. Specifically, Juror No. 17 had answered, "I live in Collinsville. . . . My husband is a pattern-maker supervisor at American Foundries in Granite City" (Doc. 4-1, Ex. D, 8:4–7). Juror No. 17 was not challenged and later served on the jury.

At petitioner's trial, there were three African-Americans on the jury panel. The Government challenged two for cause and they were dismissed.[2] The Government then exercised a peremptory challenge against the last one, Juror No. 24 (Tr. Vol. I, 5:11–17). Petitioner brought a *Batson* challenge. In response, the Government stated that Juror No. 24 was unemployed and had never been employed (Tr. Vol. I, 6:4–6). In addition, the juror had said he "stays" in Centreville, which the Government took to mean he did not have a solid residence (*id.*, 6:6–11).[3] Petitioner's attorney did not press the objection further, and the Court denied petitioner's motion because Juror No. 24 had never been employed and was "less than detailed about his residence" (*id.*, 6:16–25).

To successfully challenge the Government's race-neutral explanation, petitioner had to show the explanation was pretextual. *United States v. Brown*, 289 F.3d 989, 993 (7th Cir. 2002). As indicated, he and his attorney did not make this showing. On appeal, the Seventh Circuit considered petitioner's argument that the Government improperly used peremptory challenges to exclude black members of the venire from the jury. *See Jones*, 2007 WL 1046515, at *2. The court noted that the Government's explanation for challenging Juror No. 24 had been upheld before. *Id.* (citing *United States v. Lewis*, 117 F.3d 980, 983 (7th Cir.

---

[2] Petitioner does not object to these challenges.

[3] According to the transcript, it was Steelville, not Centreville.

1997)). And petitioner had "made no attempt to demonstrate pretext." *Id.* The Court of Appeals found that issue to be frivolous. *Id.*

The Court is obliged to construe petitioner's argument liberally. *See, e.g.*, *McNeil v. United States*, 508 U.S. 106, 113 (1993). His true claim on this issue is that trial counsel was ineffective, not appellate counsel. Unfortunately, the Government's response and trial counsel's affidavit do not address that issue or the *Batson* challenge (Doc. 15 & Ex. 1). Petitioner asserts that the Government showed "uncalled for haste" by attempting to use its first peremptory challenge against Juror No. 24. He also claims every juror on the panel except Juror No. 1 answered the question asking where they lived in the same way as Juror No. 24, but they were all Caucasian and not challenged. And he says prospective Juror No. 17, who was Caucasian, answered the venire questions similarly to Juror No. 24, but she was not challenged and later served on the jury. Juror No. 17 answered, "I live in Collinsville. . . . My husband is a pattern-maker supervisor at American Foundries in Granite City." Petitioner notes that she did not say whether she was employed. Thus under *Coulter v. Gilmore* he suggests the Government's explanation for challenging Juror No. 24 was pretextual because it applied to other unchallenged Caucasian jurors. 155 F.3d 912, 921 (7th Cir. 1998) ("A facially neutral reason for striking a juror may show discrimination if that reason is invoked only to eliminate African-American prospective jurors and not others who also have that characteristic.").

Petitioner must prove that trial counsel's performance fell below an objective standard of reasonableness. Thus he must show that it was professionally unreasonable for trial counsel not to demonstrate pretext based on the other jurors' and Juror No. 17's responses. Petitioner asserts that all the jurors except Juror No. 1 answered the question about where they lived the

same way as Juror No. 24. That is plainly untrue. Not one of them did (Doc. 4-1, Ex. D, 3–12). Juror No. 17 said she "lives" in Collinsville, which implies permanent residence there. Juror No. 24 said he "stay[s] in Steelville, Illinois" (Doc. 4-1, Ex. D, 9:13–14). As the Court noted at *voir dire*, the term "staying" is a colloquialism. It could indicate either a temporary or permanent residence. By itself, his answer was not clear. Regarding employment, Juror No. 17 gave her husband's occupation and said nothing of her own, which implies she is a housewife. In contrast, Juror No. 24 said he was unemployed and had never been employed. Juror No. 17 made no such statement. The Court does not find Juror No. 17's responses remotely comparable to Juror No. 24's. And the Government's choosing to strike Juror No. 24 first does not show an uncalled-for haste, since his answers differed from the rest of the panel's. The Court finds it was reasonable for trial counsel to have avoided such a strained pretext argument, if it occurred to him. *See United States v. Shukri*, 207 F.3d 412, 418 (7th Cir. 2000) (applying a "strong presumption" that decisions by counsel are within reasonable trial strategies). Furthermore, petitioner was not prejudiced by counsel not arguing pretext because the argument had no merit. The Court would have overruled it. Accordingly, trial counsel was not ineffective, and Ground 4 and Supplement Ground 4 are **DENIED**.

### D. Ground 5 & Supplement 5

Petitioner next contends that appellate counsel was ineffective for (1) not raising nonfrivolous issues supported by citation to the record and applicable legal authority in her *Anders* brief and (2) not arguing the Government committed a *Brady* violation for its alleged nondisclosure of exculpatory evidence.

Regarding the first argument, petitioner does not indicate what the allegedly nonfrivolous issues are that appellate counsel failed to raise, other than the *Brady* issue. That alone cannot be grounds for relief. *See Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004) (petitioner offered no evidence to support claim that his counsel failed to investigate). And on appeal, petitioner was given the opportunity to respond to counsel's *Anders* brief, but he did not raise any potential issues his counsel had not already raised. *See Jones*, 2007 WL 1046515, at *1. If petitioner is faulting appellate counsel for not citing to the record and providing legal authority, that claim is without merit. The court of appeals found counsel's *Anders* brief was facially adequate. *See id.* at *1. That decision is binding on this Court.

Moreover, appellate counsel was not ineffective for not raising the *Brady* violation because trial counsel did not object during the opening statements or when Enloe testified about the audio tapes and transcript. Without an objection on the record, appellate counsel could not have known of a potential *Brady* violation.

After filing the original motion, a memorandum in support, and a lengthy supplement, petitioner submitted a reply to the Government's response in which he alleges for the first time that appellate counsel misled him and the court of appeals. Issues raised for the first time in a reply are deemed waived, *e.g.*, *In re Busson-Sokolik v. Milwaukee School of Engineering*, 635 F.3d 261, 268 (7th Cir. 2011), so the Court will not consider that allegation.

The second argument, liberally construed, is better framed as ineffective assistance of trial counsel for not objecting to the potential *Brady* violation. Petitioner states that the Government did not disclose that inmates can use each other's personal identification numbers

("PIN") to make phone calls. Petitioner claims that such information could a cast reasonable doubt on whether petitioner was the individual recorded in the phone calls, and the fact someone else could have used petitioner's PIN would have been material to a key issue at trial.

The failure to disclose material evidence to a criminal defendant constitutes a violation of due process. *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *United States v. Banks*, 405 F.3d 559, 563 (7th Cir. 2005); Fed. R. Crim. P. 16(a). To demonstrate a *Brady* violation, the defendant must show: (1) the existence of evidence favorable to the defendant because it is exculpatory or impeaching; (2) suppression of the evidence by the government; and (3) prejudice. *Banks*, 405 F.3d at 564 (citing *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

As to ineffective assistance of trial counsel, there was no *Brady* violation, so counsel's performance did not fall below an objective standard of reasonableness. There was no suppression of the fact that inmates can use one another's identification numbers. The Government sent a discovery report to petitioner's original defense counsel, Gary Mack, on February 3, 2003, which included an Illinois Department of Corrections intelligence report. The report showed that petitioner himself had been using another inmate's PIN to make phone calls from prison (Doc. 15, Ex. 5). He could not have been surprised by that fact at trial. Petitioner even admitted he made the calls on direct examination. Question: "Did you make these calls at Mr. Poenitske's request?" Answer: "Every last one of them" (Tr. Vol. V, 31:6–7). He cannot now argue that someone else might have made them by using his PIN.

Petitioner was not prejudiced either because the withheld evidence must be exculpatory or impeaching. The fact that inmates are able to use each other's PINs does not demonstrate that petitioner was not the one using the telephone. Petitioner does not deny he made the calls.

19

He admitted to making them and several witnesses testified that he had arranged the drug transactions. Petitioner's Ground 5 and Supplement 5 are without merit and must be **DENIED**.

**E. Ground 6 & Supplement 6**

Petitioner argues that his appellate counsel was ineffective for not raising on appeal the trial court's denial of petitioner's motion to represent himself as co-counsel at trial. For support, he cites *Faretta v. California*, 422 U.S. 806 (1975). The district court denied petitioner's motion to represent himself as co-counsel, with the amendment that, should the case proceed to trial, petitioner would still be able to talk to counsel, write him notes, and make suggestions (Doc. 4-1, Ex. F, 2–3). Petitioner does not claim he was prejudiced in fact by the denial of his motion. Rather, he claims that the denial of counsel is presumed to be prejudicial. *See Strickland*, 466 U.S. at 692.

But this argument is without merit because there is no right to represent oneself *as co-counsel*. *United States v. Patterson*, 576 F.3d 431, 436 (7th Cir. 2009). Whether to allow a defendant to represent himself when he is also represented by counsel is "solely within the discretion of the trial court." *Id.* (quoting *United States v. Chavin*, 316 F.3d 666, 671 (7th Cir. 2002)). And it is disfavored. *Id.* at 437. *Faretta* addressed the right of a state criminal defendant to represent himself without counsel. *Faretta*, 422 U.S. at 807 ("[T]he question is whether a State may constitutionally hale a person into its criminal courts and there force a lawyer upon him, even when he insists that he wants to conduct his own defense."). That does not apply here. Thus there was no deficiency on the part of appellate counsel for not raising this argument. And because petitioner was represented by counsel, prejudice is not presumed. Petitioner does not suggest there was any actual prejudice.

Because the district court has discretion to determine whether a defendant may represent himself as co-counsel, appellate counsel's decision not to appeal on that basis did not fall below an objective standard of reasonableness and did not prejudice petitioner's case. Ground 6 and Supplement Ground 6 are **DENIED**.

**F. Ground 8 & Supplement 7**

In Ground 8, petitioner claims trial counsel and appellate counsel were ineffective for not bringing certain motions that allegedly could have changed the outcome of the case. This forced petitioner to file the motions pro se, and the Court denied the motions. The Court also ordered petitioner to stop filing motions while he was represented by counsel. Petitioner lists the motions he believes counsel should have raised on his behalf, including motions for an evidentiary hearing, to suppress evidence, to dismiss the indictment, to suppress wire taps, for a separate hearing to determine the existence of conspiracy, for a bill of particular, to allege a defect in instituting the prosecution, to allege a defect in the indictment or information, notice of the government's intent to use evidence from separate indictments of the codefendants (*e.g.*, case nos. 02-cr-1131 and 03-cr-496), for a new trial, for acquittal,[4] and for a mitigation specialist. He also complains that counsel did not refile his pro se motions after they were stricken.

Under *Strickland*, when claiming trial counsel was ineffective for failing to file a motion, petitioner must prove that such motion was meritorious. *See United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005). Petitioner has not done so. He has not said why

---

[4] The Government notes that counsel for petitioner did file two motions for acquittal and both were denied (Tr. Vol. V, 17 & 73).

the motions should have been filed, and their relative merit, he only lists them. The Government was scarcely able to respond because petitioner does not explain the basis for the motions. It is petitioner's burden to prove ineffective assistance, not the Government's burden to disprove it.

One motion is slightly more detailed. Petitioner argues that counsel should have moved to subpoena codefendant Byron Sutton to explain contradictions in Poenitske's police reports, proffer statement, and testimony. The Court construes this as meaning petitioner's trial counsel should have called Sutton to testify. Petitioner adds that Sutton should have been called to testify at sentencing to dispute the quality and quantity of drugs that he sold Poenitske. But petitioner does not offer a clue what Poenitske's alleged contradictions were or why he believes Sutton could have explained them. He does not give any reasons why Sutton could be expected to dispute the quality or quantity of drugs. These bare assertions are not sufficient for the Court to judge whether trial counsel's performance was reasonable or not.

The Government responds that petitioner could not have been prejudiced in light of the witnesses who testified against petitioner, the recordings of phone calls, and petitioner's own testimony that he arranged the drug transactions. The Court agrees and therefore **FINDS** that counsel's performance was not deficient and petitioner was not prejudiced by Sutton's absence.

The last argument in Ground 8 is that petitioner's trial counsel should have provided him with the 17 envelopes that counsel filed with the Seventh Circuit under seal. Appellate counsel filed a motion to release them during the appeal. However, the Court of Appeals denied the motion, returned the envelopes to the district court, and decided it would request

them back if they were relevant. *See United States v. Jones*, No. 05-3881 (7th Cir. June 23, 2006). Petitioner does not discuss why the envelopes might be relevant. Therefore this Court will not address the claim further. Ground 8 and Supplement Ground 7 are **DENIED**.

**G. Ground 9 & Supplement 8**

Trial counsel did not object to the Government's use of parolee Jau Tolden as an informant. According to petitioner, it is a violation of the Bureau of Alcohol, Tobacco, and Firearms' Rule #40, Illinois Department of Corrections Supervised Release Rules and Regulations Rule #12, and the Federal Rules of Criminal Procedure to use a parolee as an informant in drug and weapons transactions. He asserts that a federal prisoner released on parole remains in the custody of the Attorney General and U.S. Parole Commission, so the parolee may not serve as an informant without prior approval from the Parole Commission.

The Government responds that it is unaware of any rule prohibiting such use of parolees and, if there is such a rule, its violation would not entitle petitioner to relief under § 2255. The Government therefore concludes there could not have been ineffective assistance of counsel for not objecting to the use of Tolden as an informant.

The Court has not been able to find a rule prohibiting the use of a parolee as a confidential informant. The Department of Justice requires review and prior approval by the Office of Enforcement Operations before a person in the custody of, or under supervision by, the Bureau of Prisons is used for investigative purposes. UNITED STATES ATTORNEYS' MANUAL § 9-21.050 (Jan. 2009). That rule appears to be an administrative or personnel policy, however. It is not a rule of law established by the Congress or the Judiciary to protect the rights of criminal defendants.

Petitioner also objects in Ground 9 to his treatment on cross-examination by the prosecutor. He says the prosecutor became hostile in her questioning of him and his trial counsel was ineffective for allowing the questioning to take place in front of the jury. Petitioner seems to be referring to the following exchange:

> Q: If you're really being threatened by Poenitske, why didn't you just tell "Frosty" on one of those phone calls, hey, the next time he comes up there, kill him for me, he's threatening me, this guard is all over me?
> A: Because—
> Q: Do me a favor, man, take care of my problem. You didn't do that, did you?
> A: Because then I'm dead.
> Q: You didn't want your problem taken care of because he was your business partner, he was your partner in crime, he was your partner in drugs?
> A: Ain't my business partner. I gained $100 from him, which was from him eating up my commissary. I didn't get a dime from these drug sales, these drug deals. I don't do dope. He never gave me nothing. How—so how is he my business partner? Business partner is who you making money together.
> Q: Okay. And you were hoping to get out one day, right?
> A: I had seven years left. Only time I—only way I got out any time soon before—in fact, from 2000, I had nine years left. Only way I got out soon is I got my good time back to prevent him from having it taken.

(Tr. Vol. V, 49:2–22). The Government does not believe any of these questions were improper. The suggestion that petitioner could have had Poenitske killed was provocative, perhaps overly so. But petitioner responded that he would have been dead if he had tried to have Poenitske killed. If anything, his response supported his duress defense. The Court finds it was within the range of reasonable professional competence not to object to the above questioning. Further, the Court can find no measurable prejudice in this short exchange. If the

24

Court had sustained an objection and stricken the question about having Poenitske killed, it would probably have had no effect. There was overwhelming evidence against petitioner. Ground 9 and Supplement Ground 8 are **DENIED**.

**H. Supplement Grounds 9–16**

Petitioner filed a supplement to his original petition and memorandum on September 25, 2008 (Doc. 6). A motion under 28 U.S.C. § 2255 generally must be filed within one year of "the date on which the judgment of conviction becomes final." § 2255(f)(1). When a defendant appeals his conviction and the appellate court issues its mandate, the judgment of conviction becomes final for purposes of the one-year limitation period when the time to file a petition for certiorari to the Supreme Court has expired. *Clay v. United States*, 537 U.S. 522, 525 (2003). The motion may be amended after one year if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original" motion. Fed. R. Civ. P. 15(c)(1)(B). More specifically, the Supreme Court held in *Mayle v. Felix* that for untimely claims to relate back to the original motion, they must be "tied to a common core of operative facts" with a claim in the original motion. 545 U.S. 644, 664 (2005); *Tucker v. Kingston*, 538 F.3d 732, 734 (7th Cir. 2008). Untimely claims that depend on events separate "in both time and type" from the original claims do not relate back. *Felix*, 545 U.S. at 657. In general, as long as the untimely claim is based on a common core of operative facts with an original claim, it may set out a new legal theory. *See id.* at 657–58, 658 n.5, 664 n.7.

Here, the Seventh Circuit entered its judgment on April 5, 2007. Petitioner then had 90 days from that date to file a petition for a writ of certiorari, which would have been July 5,

2007. *See* Sup. Ct. R. 13(1). Under § 2255(f)(1), petitioner had one year from that date, until July 5, 2008, to file his motion for collateral relief. He filed it timely on April 2, 2008. But the supplement came too late, on September 25, 2008. The supplement raises some issues not raised in the original motion.

Supplement Ground 9 alleges the district judge double-counted the quantity of drugs at petitioner's sentencing. Yet the issue of drug quantity and the advisory guideline range was reviewed on appeal and found to be frivolous. *Jones*, 2007 WL 1046515, at *4. In addition, as a nonconstitutional claim, the application of the Sentencing Guidelines is not cognizable on collateral attack. *See, e.g.*, *Buggs v. United States*, 153 F.3d 439, 443 (7th Cir. 1998). Supplement Ground 9 is **DENIED**.

Supplement Ground 10 alleges petitioner was denied a fair sentencing because prior convictions were used against him without the existence of those convictions being proven beyond a reasonable doubt to a jury. This claim was also raised on appeal and found to be frivolous. *Jones*, 2007 WL 1046515, at *4. And it is untimely and does not relate back to any claims in the original motion. Supplement Ground 10 is **DENIED**.

Supplement Ground 11 is based on a violation of due process under the Fifth Amendment. Petitioner alleges he told ATF Agent Dan Owens in his proffer that he had cooperated with Poenitske only because he was under duress. But Owens testified otherwise. Petitioner now claims Owens altered petitioner's proffer statement. Thus, petitioner believes Owens's notes would support his duress defense. The Government responds that this claim is untimely and barred because it does not relate back to any claim in the original motion. The

Court agrees this claim is untimely. The facts alleged are not based on a common core of operative facts with any claim in the original motion.

Even if it were not time-barred, to raise a constitutional issue that was not raised on appeal, petitioner must demonstrate either (1) good cause for not raising it and actual prejudice, or (2) that the district court's refusal to consider it would lead to a fundamental miscarriage of justice. *See McLeese*, 75 F.3d at 1177. Petitioner has not shown any cause for not raising this claim on appeal, nor can he show any prejudice, since he testified at trial and was able to dispute Owens directly. And, as discussed above, petitioner's duress argument had numerous holes in it. For instance, petitioner admitted that Poenitske's threats did not coerce him to participate in the crimes. *See Jones*, 2007 WL 1046515, at *3. Owens's notes could not hope to repair the damage already done to petitioner's case by his own testimony. Thus there was no actual prejudice from not raising this claim on appeal. Lastly, petitioner does not argue that the Court's refusal to consider his claim will lead to a fundamental miscarriage of justice. So this constitutional claim is waived for not raising it on appeal. Supplement Ground 11 is **DENIED**.

Supplement Ground 12 charges another claim of ineffective assistance of counsel for not objecting to petitioner's sentence imposed under the Sentencing Reform Act of 1984. Petitioner's prior convictions were used to enhance his sentence. But he contends the Court may not use any convictions obtained before the Sentencing Guidelines, citing *United States v. Morris*, 957 F.2d 1391, 1404 (7th Cir. 1992). The Government passes on the merits of Supplement Ground 12, instead urging that it is untimely and does not relate back to any claims raised in the original motion. On that score the Government is correct. The claim is

27

time-barred. The claim is also procedurally defaulted in that it is a nonconstitutional claim that could have been, but was not raised on direct appeal. *See Belford*, 975 F.2d at 313. Therefore, Supplement Ground 12 will not be considered on the merits and is **DENIED**.

In Supplement Ground 13, petitioner claims the district judge erred when he relied on "other factors" in finding that petitioner exceeded his role as a "facilitator" of the drug transactions. Petitioner again attests that ATF Agent Owens took notes during petitioner's proffer meeting. The notes would show that petitioner was coerced into arranging drug sales, and the gun sale to Jau Tolden. He asks the Court to grant an evidentiary hearing or to compel Owens to produce the notes. The Government responds that this claim is untimely and does not relate back to any claims in the original motion. Further, it notes that this claim was already addressed by the Court of Appeals. *Jones*, 2007 WL 1046515, at *4 (finding petitioner's argument about the sentencing adjustment for his leadership role under U.S.S.G. § 3B1.1(a) was frivolous). The Government is correct on both points. Supplement Ground 13 is **DENIED**.

Supplement Grounds 14, 15, and 16 are only dashed-off one-sentence summaries on one page. Petitioner alleges that the district judge failed to instruct the jury that petitioner's case was a buyer-and-seller case, petitioner's superseding indictment was not presented to a grand jury, and the district judge erred in allowing the codefendants' conduct to be attributed to petitioner for his leadership role in the conspiracy.[5] These claims are all untimely and do not relate back to any claims in the original motion. They are time-barred. And Supplement

---

[5] Petitioner says the conduct was "attributed to him being in control," which the Court believes is referring to his leadership role in the conspiracy.

Ground 16, asserting that it was an error to attribute the codefendants' conduct to petitioner, was dismissed on appeal. *Jones*, 2007 WL 1046515, at *4 (petitioner's leadership role in the conspiracy). Supplement Grounds 14, 15, and 16 are **DENIED**.

<u>**CONCLUSION**</u>

Accordingly, the Court **DENIES** petitioner's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (Doc. 1), including the Supplement (Doc. 6), on all grounds raised. The petition for habeas relief is **DISMISSED WITH PREJUDICE**. The Clerk of the Court is **DIRECTED** to enter judgment accordingly. Each party is to bear its own costs.

**IT IS SO ORDERED.**

**DATED:   September 27, 2011  **

**/s/  WILLIAM D. STIEHL  **
**DISTRICT JUDGE**

29